JENSEN et al v. FREEMAN GULCH MINING CO.

No. 6819.   Decided February 18, 1946.   (166 P. 2d 250.)

See 5, C. J. S., Appeal and Error, sec. 1498; 36 Am. Jur., 250.

*Gaylen S. Young,* of Salt Lake City, for appellants.

*Willard & S. M. Hanson,* of Salt Lake City, for respondent.

TURNER, Justice.

This appeal is brought by plaintiffs and appellants from a judgment of the Third District Court for Salt Lake County in their favor awarding only nominal damages of 10 cents for breach of an agreement. At the time the case was called for trial (February 1, 1945), the trial court entered judgment dismissing the second cause of action of their second amended complaint. The trial proceeded on the first cause of action which involved an employment agreement between plaintiffs and defendant, dated September 15, 1938, under which plaintiffs performed mining exploration work in tunnel No. 6 of a mining claim owned by defendant, together with other mining property, in the Western Mountain Mining District near Bingham Canyon in Salt Lake County. This trial resulted in a verdict in favor of plaintiffs for wages earned under the employment agreement and judgment was accordingly entered thereon.

The second cause of action involves a royalty lease made and executed by plaintiffs and defendant on October 8, 1938, for a period of three years from that date, by the terms of which plaintiffs were to develop tunnel No. 8 of another claim owned by defendant and not far removed from the above mentioned tunnel No. 6.

It is important here to direct attention to the distinction between the two agreements referred to. On tunnel No. 6 the parties entered into an employment argument, providing for wages to be paid to plaintiffs for development work performed. On tunnel No. 8 they entered into a "royalty lease," so designated by them, depending on one of two

conditions, or both, occurring before plaintiffs would realize any revenue from the venture. One was the discovery of commercial ore, upon which they would be required to pay 15% royalty and thereafter themselves pay for all material and supplies required for further development; and the other would occur in the event defendant sold the property during the life of the lease without the discovery of commercial ore, in which event defendant agreed to pay plaintiffs $10 a foot for the tunnel development to the date of such sale; or if ore had been discovered in paying quantities, plaintiffs would be given six months after the sale to continue to extract it. The importance of this distinction will become more evident in our consideration of the measure of damages applied to plaintiffs' second cause of action by the trial court.

At the time of the trial, the court's judgment of dismissal of the second cause of action was based upon certain facts which were stipulated to by respective counsel in a chamber conference and the pleadings. Following the trial, the court reconsidered its order of dismissal and entered a written order and judgment (on February 17, 1945) awarding plaintiffs nominal damages, as follows:

"It appearing to the court from the oral statement of counsel for plaintiffs, and from the agreed facts as stated to the court, that the plaintiffs, Willard Jensen and Tony Strelich, leased from the defendant, Freeman Gulch Mining Company, a parcel of mining land for the purpose of extracting ore therefrom, and that until ore in paying quantities was found, that the defendant, Freeman Gulch Mining Company, would furnish to the plaintiffs all tools and necessary supplies for the lessees to use during the term of the lease;

"And it further appearing that in case ore in paying quantities was discovered that the Freeman Gulch Mining Company should receive royalty therefrom in the amount of 15 per cent of all ores extracted and shipped by said plaintiffs;

"*And it further appearing from said statement of counsel for the plaintiffs and from said agreed statement of facts that an injunction was issued in the Federal Court restraining and prohibiting both the plaintiffs and the defendant from using the surface right of the mining property leased between these plaintiffs and defendant in the instant case, and that thereafter the defendant, Freeman Gulch Min-*

*ing Company, refused to furnish powder or tools to the said Willard Jensen and Tony Strelich, and that the said Willard Jensen and Tony Strelich failed and refused to do any additional work an said mining claim because of their inability to secure powder and supplies;*

"And it further appearing to the court that in case a sale was made during the life of the lease and before ore in paying quantities had been recovered to the extent of amounting to ten dollars per foot of drifting done by plaintiffs, Willard Jensen and Tony Strelich, that the defendant, Freeman Gulch Mining Company, would pay unto said plaintiffs a sum of money equal to ten dollars per foot of drifting so done;

"And it further appearing that there was no sale of said mining property within and during the term for which the lease above mentioned was to run, and the court being of the opinion that the measure of damage, if any, suffered by the plaintiffs, Willard Jensen and Tony Strelich, would be the value of any supplies and tools which they purchased in furthering their work and not the agreed damages in case of sale, and the plaintiffs having elected to stand upon their complaint as drawn and demanded damages in the sum of ten dollars per foot for the number of feet in the tunnel made by the plaintiffs, and it appearing to the court that plaintiffs are entitled only to nominal damages;

"It is hereby ordered, adjudged, and decreed that the plaintiffs have and recover judgment from the defendant in the sum of ten cents." (Italics added.)

Appellants assign as error the court's dismissal of the second cause of action and its failure to submit the question of damages thereunder to the jury; and, further, that the court erred in granting only nominal damages.

Our decision depends upon the construction to be given to the terms of the royalty lease and the effect of the condemnation proceedings thereon. Under the lease, the defendant was required to furnish to plaintiffs all tools, powder, material, supplies, etc., necessary to perform the work and in the event ore was discovered in commercial quantities, plaintiffs were to ship. it to the nearest smelter at their expense and pay to defendant a 15% royalty out of the proceeds therefrom, and thereafter to pay for all material and supplies in further development. Defendant retained the right to sell the property at any time during the term of the lease, and in this respect Sec. 9 of the lease provided:

"It is further agreed that the company shall have the right to sell said premises during the term of this lease, and that a sale of said premises shall automatically terminate this lease, and upon such sale the said lessees agree to surrender all of said leased premises and to quit the same immediately on said sale. It is agreed, however, that in the event of a sale, the said company shall pay to said lessees for any and all work done by said lessees upon said leased premises, payment thereof to be made as follows: At the rate of $10.00 a foot for all tunnel work done and performed by said lessees. However, should ore be struck in commercial quantities before a sale of said premises and should ore be extracted from said premises which shall net said lessees a sufficient amount to pay for the running of said tunnel on the basis of $10.00 per foot, then and in that event, the said company shall not be obligated to pay said lessees for the running of said tunnel but the said lessees shall have the right to continue to extract ore for a period of six months after said sale."

From the date of the lease, October 8, 1938, until August 17, 1940, plaintiffs ran and extended the tunnel 579 feet, and on or about the latter date defendant ceased and failed to furnish material and supplies for further development, resulting in the termination of the lease. This termination was directly caused by condemnation proceedings brought by the Kennecott Copper Company which we will discuss shortly. Plaintiffs prayed for judgment of $5790 together with interest for the breach of the contract, based on $10 a foot for the 579 feet of tunnel development. This clearly would have been the measure of damages had the defendant sold the mining property during the life of the lease, but, as the trial court ruled, cannot be applied to the instant case under the circumstances surrounding the involuntary termination of the lease and the provisions of the lease itself.

In order to give a clear picture of the situation, we now revert to the italicized portion of the trial court's judgment above quoted relating to an injunction issued out of the Federal Court. During the life of the royalty lease (on or about March 13, 1940) the Kennecott Copper Company, by the filing of an amended complaint, revived the condemnation suit which it had commenced in October of 1937 in the United States District Court for the district of Utah

against the Freeman Gulch Mining Company and by order of court interpleaded the plaintiffs herein (Tony Strelich and Willard Jensen) as defendants. That suit resulted on July 27, 1940, in a decree of the Federal Court condemning to the Copper Company the surface rights over certain mining property of the Freeman Gulch Mining Company for use as dumping ground for overburden waste from the Copper Company's adjacent mining properties.

This decree of condemnation enjoined and restrained the Freeman Gulch Mining Company, Willard Jensen and Tony Strelich, their servants, agents and employes, from hindering or interfering with the occupation of the surface of the mining property therein described and owned by the Freeman Gulch Mining Company (i. e., the Gulch Company owned a four-fifths interest and the Copper Company the other one-fifth interest), beneath which were located the mining claims and tunnels which were being worked and developed by Strelich and Jensen. The effect of this decree was to cut off access to the tunnel entrances and render it impossible for plaintiffs to continue their development work, and the defendant, for that reason, ceased and failed to furnish any further material or supplies under the lease agreement.

The Freeman Gulch Mining Company, Jensen and Strelich, defendants in that suit, appealed to the United States Circuit Court of Appeals from the condemnation decree. A copy of the printed transcript of record on that appeal was introduced in this case. After having been interpleaded as defendants in that case, plaintiffs herein filed an answer in which they clearly distinguish the nature and character of the two mining agreements involved in the case at bar. They allege therein that on October 8, 1938, they entered into written lease with the Freeman Gulch Mining Company *"for mining purposes on a royalty basis."* The answer then continues:

"These defendants further aver that in addition to the said leasehold interest as aforesaid, they also on or about September 15, 1938 entered into a written agreement with the said Freeman Gulch Min-

ing Company, *by the terms of which the defendants * * * were employed* by said company to run and drive that certain *tunnel known as and called No. 6 tunnel* * * * until it reached a point underneath what is known as and called *Tunnel No. 8* * * * *and that for such services, in running and extending the said No. 6 tunnel, the said defendants were to be paid a compensation by the said Freeman Gulch Mining Company* * * * but that in such connection it was further * * * agreed to that in the event these defendants struck commercial ore in any of the properties * * * they * * * had the right to extract and remove such ore upon paying to the company 15 per cent royalty, *in which event the right of the said defendants to wages ceased and all payments made under and in pursuance of the agreement as wages were to be refunded by the defendants to the company, provided ore was struck in sufficient quantity or quantities to permit such repayment;* but it was further agreed that if such ore be encountered, then these defendants, in the event of a sale of the said premises, had the right to continue to extract such ore for a period of six months after such sale." (Italics added.)

The answer continues with further allegations of performance and adoption of the answer of the Freeman Gulch Mining Company, and then denies the right of the Copper Company to condemn, but alleges that if it be permitted to condemn the answering defendants would be damaged in the amount of $15,000, and prays for judgment in that sum.

This transcript of record not only contains all the pleadings and other proceedings in the condemnation suit from the beginning, but also contains a record of the oral opinions and conclusions of the Federal trial judge during the course of those proceedings. When the condemnation suit was first instituted in 1937, the complaint, after hearing, was dismissed without prejudice to the right of the Copper Company to renew the suit under new and changed circumstances, and gave the Freeman Gulch Mining Company time and opportunity to "diligently" pursue development work on its claims in order to determine whether it had a mine or not. It was following this dismissal, in 1938, that the Freeman Gulch Mining Company entered into these development contracts with Strelich and Jensen. It is evident from the findings and oral opinions of the Federal

Judge at the time the suit was revived that he found no satisfactory evidence that the Freeman Gulch Mining Company had any immediate possibility of developing a mine, no commercial ore having been discovered by the development work of Strelich and Jensen, and entered the decree referred to for the immediate use and occupation by the Copper Company of the surface rights described. Provision was made, however, at the expense of the Copper Company for the erection, maintenance and operation of a shaft to provide the Gulch Company means of further exploration through its tunnel No. 6. This in no way relates to tunnel No. 8, however, and has no bearing on plaintiff's cause of action before us.

It is obvious, from the foregoing that, the termination of operation under the lease resulted from the condemnation proceedings and was not due to the fault of ■ either the defendant or the plaintiffs. The defendant did not breach the contract and so on this alleged cause of action the plaintiffs were not entitled to damages. Affirmed. Costs to respondent.

McDONOUGH, J., concurs in the opinion of Mr. Justice TURNER and in the view expressed by Mr. Justice WOLFE.

WADE, J., concurs in the opinion of Mr. Justice TURNER and in the view expressed by Mr. Justice WOLFE.

LARSON, Chief Justice (concurring).

I concur. It appears that in the condemnation proceeding in the federal court these plaintiffs were made parties defendants, that their interests if any, and the value of their lease, were therein litigated and determined. Since that court in effect found the chances of realizing "pay dirt" in tunnel eight was practically nil, and therefore the royalty lease of plaintiffs was of no value, plaintiffs have had their day in court. That terminates this lawsuit.

WOLFE, Justice (concurring).

I concur. The real defense to this suit lies in the fact that the Federal court, on condemnation proceedings by the Kennecott Copper Company, permanently restrained and enjoined the plaintiff and the defendant from hindering or interfering with the occupation of the Kennecott Company to which the Federal court through power of eminent domain gave the surface rights. The plaintiffs were made party defendants in that suit. The effect of that judgment was to cut off access to tunnel No. 8 and made it impossible for the defendants to permit entry by the plaintiffs and therefore useless for the power to furnish further supplies, powder and tools for the prosecution of the work. It is this defense of excusable breach as it is sometimes called that defeats the right of plaintiffs to recover. The fact that the Federal court found the interest of plaintiffs in the so-called "royalty lease" valueless simply is some evidence of that fact but whether it has the strength of res adjudicata not being between the same parties although all these parties were in as condemnees in that suit, need not be determined.

There was no showing in this suit that the defendants had connived with the Kennecott Copper Company nor yielded to its condemnation suit in bad faith in order to squeeze out the plaintiffs which had it been the case might have given rise to an action for the recovery of the reasonable value of the work and labor they put into the 579 feet. I fail to see why the lower court gave plaintiffs even nominal damages of ten cents and why, after it recited that an injunction prevented both plaintiffs and defendant from using the surface right (which in turn prevented access to tunnel No. 8), it should not have found that the "lease" was virtually terminated by circumstances beyond the control of both plaintiffs and defendants and that plaintiffs' damages were already determined in the condemnation suit and that such was a valid defense on part of the defendant. But since there was no cross appeal, the judgment should be affirmed.